AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Oscar Peralta and Carlos Contreras,<br><br>Defendant(s) | Case No. 19-6560-HUNT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **November 22, 2019** in the county of **Broward** in the
**Southern** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute a controlled substance |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Pedro Roman, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/23/2019

_____
*Judge's signature*

City and state: Miami, Florida

Hon. Patrick M. Hunt, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Pedro Roman, being duly sworn, hereby depose and state the following:

1.  I am a Special Agent with U.S. Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since October 2010. I am presently assigned the Office of the Special Agent in Charge, Miami, Florida, where I am responsible for conducting maritime narcotics smuggling investigations. As a special agent with HSI, I have participated in numerous narcotics investigations involving physical and electronic surveillance; the control and administration of confidential sources; international drug importations; and domestic drug organizations. I have participated in the arrest and subsequent prosecution of numerous drug traffickers. I also have spoken on numerous occasions with informants, suspects, and other narcotics investigators concerning the manner, means, methods and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling drug trafficking organizations.

2.  As a law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 21, and 46 of the United States Code.

3.  The information contained in this Affidavit is submitted for the sole purpose of establishing probable cause for the arrest of Oscar PERALTA and Carlos CONTRERAS for knowingly and willfully conspiring to possess with intent to distribute a controlled substance, that is, five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A)(ii); all in violation of Title 21, United States, Section 846.

4.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all the information known to me and other law enforcement officers involved in this investigation. The facts and information contained in this Affidavit are based on my personal knowledge and observations, information provided by other individuals, including other law enforcement officers involved in this investigation, and my review of records, documents, and other physical items obtained during this investigation.

## Probable Cause

5.      On or about March 2019, HSI agents investigating a transnational cocaine smuggling organization identified Oscar PERALTA as the owner of a 1999, 47-foot Viking motor yacht named NIVIA. On or about October 2, 2019, HSI agents obtained a federal tracking warrant for the NIVIA and a cellphone tracking warrant for PERALTA'S cellphone. On or about November 14, 2019, HSI observed PERALTA at the Sea Isle Marina in Miami, Florida. During the surveillance of PERALTA, agents observed PERALTA depart the marina aboard the NIVIA. Location information from PERALTA'S cellphone indicated PERALTA departed the United States aboard the NIVIA through Government Cut, a manmade shipping channel between Miami Beach and Fisher Island. As the NIVIA left Sea Isle Marina, agents determined that the tracking device installed on the vessel was not transmitting location information.

6.      On or about November 18, 2019, HSI agents received information from officials in the Turks and Caicos Islands that PERALTA and Subject #1 arrived in Providenciales, Turks and Caicos, on November 16, 2019 aboard the NIVIA. According to information in the Turks and Caicos immigration and customs arrival paperwork, Subject #1 was listed as master of the NIVIA, PERALTA and Subject #1 arrived in Providenciales from Long Island, Bahamas, and they intended to depart Turks and Caicos on November 17, 2019. On or about November 19, 2019,

Turks and Caicos officials confirmed that the NIVIA had departed Turks and Caicos and reported a next port of call in Puerto Rico.

7.  Shortly after 4 pm on November 22, 2019, HSI agents received the first location ping from PERALTA'S cellphone since PERALTA left the U.S. on November 14, 2019. The location ping indicated that PERALTA'S cellphone was somewhere near Fort Lauderdale beach in Fort Lauderdale, Florida. Agents responded to the vicinity to locate PERALTA and the NIVIA. Shortly before 5 pm, location pings from PERALTA'S phone indicated the device was in the vicinity of Lido Drive south of Las Olas Boulevard in Fort Lauderdale, Florida. The area is primarily made up of waterfront residences. Agents were familiar with the area because location pings from PERALTA's phone prior to PERALTA's departure from the United States indicated that PERALTA had visited the area several times. HSI agents and task force officers responding to the area began to search for the NIVIA.

8.  At approximately 6:30 pm, agents located the NIVIA docked in a private dock behind a single-family home located at 509 Isle of Capri Drive, Fort Lauderdale. Agents surveilling the back of the house saw PERALTA aboard the NIVIA while it was docked behind the residence. Agents maintained surveillance of the vessel until approximately 7:00 pm when agents surveilling the front of 509 Isle of Capri Drive encountered PERALTA and Carlos CONTRERAS as the two were departing the residence. Agents explained that they were at the residence regarding the vessel that had recently arrived in the United States.

9.  Agents obtained a binding declaration from PERALTA, who stated that he had just arrived from the Bahamas aboard the NIVIA along with Subject #1, who had already left the house. PERALTA stated that he had not yet reported his arrival in the United States. PERALTA stated

that he was the owner of the NIVIA and provided the key to the vessel. PERALTA was advised that a customs inspection of the vessel would be conducted.

10. Agents subsequently conducted an inspection of the NIVIA and discovered five duffle bags loaded with brick shaped packages containing a white, powdery substance in the main saloon. Agents found additional packages and bales in the small stateroom on the starboard side of the vessel. The duffle bags and most of the packages and bales in the stateroom were in plain view. A field test conducted on the white powdery substance contained within one of the packages was positive for the presence of cocaine. The estimated weight of the cocaine recovered from the NIVIA was 400 kilograms.

11. During a post-*Miranda* interview, PERALTA admitted to traveling from Miami, Florida, to an area south of Turks and Caicos and north of the Dominican Republic on board the NIVIA to pick up a shipment of cocaine. PERALTA explained that bales of cocaine were transferred onto the NIVIA from another vessel that met with the NIVIA at sea. Once the cocaine was onboard the NIVIA, PERALTA concealed the cocaine within a compartment. PERALTA stated he was to be paid $250,000.00 dollars for transporting the cocaine to Fort Lauderdale, Florida. Additionally, PERALTA stated he was paid 10% or $25,000.00 dollars cash up front. A backpack containing $25,000 in cash was found in aboard the NIVIA. PERALTA also admitted to lying to Turks and Caicos customs officials about the vessel's next port of call in Puerto Rico. PERALTA stated that CONTRERAS was responsible for helping offload the cocaine from the NIVIA and transporting the cocaine away from the arrival location.

12. Based on the foregoing facts, I submit that probable cause exists to believe that Oscar PERALTA and Carlos CONTRERAS did knowingly and willfully conspire to possess with intent to distribute a controlled substance, that is, five kilograms or more of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A)(ii); all in violation of Title 21, United States Code, Section 846.

PEDRO ROMAN, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Sworn to and subscribed before
me this 23th day of November 2019.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA