**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER 19-20811-CR-MIDDLEBROOKS/MCALILEY**

UNITED STATES OF AMERICA,

        Plaintiff,                    **6th Floor Courtroom**

  vs.                             **Miami, Florida**

OSCAR PERALTA, FRANCISCO PERALTA,     **February 26, 2020**
CARLOS CONTRERAS,

        Defendants.

**CHANGE OF PLEA PROCEEDINGS**
**BEFORE THE HONORABLE CHRIS M. MCALILEY**
**UNITED STATES MAGISTRATE JUDGE**

**APPEARANCES:**

| | |
|---|---|
| **FOR THE GOVERNMENT:** | **YENEY HERNANDEZ, AUSA** |
| | United States Attorney's Office |
| | 99 Northeast Fourth Street |
| | Miami, Florida 33132 |
| | 305-961-9277 |
| | Fax: 305-530-7976 |
| | |
| **FOR DEFENDANT O. PERALTA:** | **PATRICK F. TRESE, ESQ.** |
| | The Law Office of Patrick Trese |
| | 12 Southeast 7th Street |
| | Suite 703 |
| | Ft. Lauderdale, Florida 33301 |
| | 954-761 9166 |
| | Fax: 954-761-9149 |
| | |
| **FOR DEFENDANT F. PERALTA:** | **DANIEL A. LURVEY, ESQ.** |
| | The Law Office of Daniel A. Lurvey |
| | 2875 Northeast 191 Street |
| | Suite 600 |
| | Aventura, Florida 33180 |
| | 305-400-4747 |
| | Fax: 305-749-5377 |

1    **FOR DEFENDANT CONTRERAS:**    **FRANK J. GAVIRIA, ESQ.**
                                      Frank J. Gaviria, P.A.
2                                     14 Northeast 1st Avenue
                                      Suite 300
3                                     Miami, Florida 33132
                                                         305-379-4441
4                                                   Fax: 786-509-8088

5    **REPORTED STENOGRAPHICALLY**
     **BY:**                         **GILDA PASTOR-HERNANDEZ, RPR, FPR**
6                                     Official United States Court Reporter
                                      Wilkie D. Ferguson Jr. US Courthouse
7                                     400 North Miami Avenue - Suite 10-3
                                      Miami, Florida  33128    305-523-5118
8                                     gphofficialreporter@gmail.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
## TABLE OF CONTENTS

2                                                                         Page

3

4
Reporter's Certificate ..................................... 45
5

6

7

8

9

10
## EXHIBITS

11   Exhibits                    Marked for          Received
                                 Identification      in Evidence
12
     Description                 Page      Line      Page    Line
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        (The following proceedings were held at 2:20 p.m.:)

 2             THE COURT:  Thank you, everybody.  Welcome.  Have a

 3   seat.

 4             All right.  So this is Case Number 19-20811, U.S.

 5   versus Oscar and Francisco Peralta and Carlos Contreras.

 6   Counsel, please state your appearances, beginning with the

 7   Government.

 8             MS. HERNANDEZ:  Good afternoon, Your Honor.  Yeney

 9   Hernandez for the United States.

10             THE COURT:  Okay.  Welcome.  And then for the

11   defendants?

12             MR. TRESE:  Good afternoon, Your Honor.  Pat Trese on

13   behalf of Oscar Peralta.

14             THE COURT:  Okay.  Welcome.

15             MR. TRESE:  Thank you.

16             MR. LURVEY:  Good afternoon, Your Honor.  Daniel Lurvey

17   on behalf of Francisco Peralta.

18             THE COURT:  Okay.  Very good.

19             MR. GAVIRIA:  Good afternoon, Your Honor.  First, I'd

20   like to apologize.  I did have a conflict.  Frank Gaviria on

21   behalf of Carlos Contreras.

22             THE COURT:  No problem, Mr. -- is it Gaviria?

23             MR. GAVIRIA:  Gaviria.

24             THE COURT:  Gaviria.  Mr. Gaviria, you'll want to pull

25   a microphone near you.
```

1          MR. GAVIRIA:  I will, absolutely, Judge.

2          THE COURT:  Okay.  All right.  So I understand that the

3    three defendants who are here have decided to enter pleas of

4    guilty, correct?

5          MR. LURVEY:  Correct.

6          THE COURT:  Okay.  And so I'd like each of them to

7    raise their right hand as best they can, so they can be sworn.

8      (All three defendants were duly sworn in by the courtroom

9    deputy.)

10          DEFENDANT O. PERALTA:  Yes.

11          DEFENDANT F. PERALTA:  Yes, ma'am.

12          DEFENDANT CONTRERAS:  Yes.

13          THE COURT:  Yes, all three of you?  Okay.

14          It's my obligation to remind each of you gentlemen that

15    you're under oath and that means you have a legal duty to be

16    truthful.  If you were not truthful today, the Government could

17    take your words and use them to prosecute you for the crime of

18    perjury.  It's very important that each of you understand

19    everything said here today.  It takes a little while to do this

20    with three defendants.  I will try to move this along as quickly

21    as I can, unless our court reporter shoots me a sign that we're

22    going too fast, but I am happy at any point to stop if any of

23    the defendants have a question for me or the court.

24          So let me ask you, Oscar Peralta, will you assure me,

25    sir, that if you are uncertain about anything that's said here

1  today, that you'll stop me and let me know that?

2       DEFENDANT O. PERALTA:  Yes, I will.

3       THE COURT:  Okay.  Why don't you pull those microphones

4  down to the table.  You can bend them.  You can move them down.

5  And particularly the microphone there on the end, I don't know,

6  you'll work it out so that there's something near Mr. Contreras.

7       Mr. Francisco, the same question for you, sir.  Will

8  you assure me that you'll stop me if you have any uncertainty

9  about what's said?

10       DEFENDANT F. PERALTA:  Yes, Your Honor.

11       THE COURT:  Okay.  And how about you, Mr. Contreras?

12       DEFENDANT CONTRERAS:  Yes, Your Honor.

13       THE COURT:  Okay.  Very good.  I have to first start

14  with a few personal questions for each of you.

15       Mr. Oscar Peralta, how old are you, sir?

16       DEFENDANT O. PERALTA:  I'm sorry?

17       THE COURT:  How old are you?

18       DEFENDANT O. PERALTA:  30.

19       THE COURT:  30.  Okay.  How far did you go in school?

20       DEFENDANT O. PERALTA:  Bachelor's.

21       THE COURT:  You have a Bachelor's degree?

22       DEFENDANT O. PERALTA:  Yes.

23       THE COURT:  Okay.  All right.  Have you ever suffered

24  from or been treated for a dependency on drugs, medication, or

25  alcohol?

1              DEFENDANT O. PERALTA:  No.

2              THE COURT:  All right.  Have you ever suffered from or

3    been treated for any form of mental illness?

4              DEFENDANT O. PERALTA:  No, Your Honor.

5              THE COURT:  Okay.  Do you feel well today, both

6    physically and mentally?

7              DEFENDANT O. PERALTA:  Yes, Your Honor.

8              THE COURT:  Okay.  Very good.

9              Francisco Peralta, how old are you, sir?

10             DEFENDANT F. PERALTA:  I am 32 years old.

11             THE COURT:  Okay.  And how far did you go in school?

12             DEFENDANT F. PERALTA:  I have a Master's Degree.

13             THE COURT:  Okay.  All right.  And have you, sir, ever

14   suffered from or been treated for dependency on drugs,

15   medication, or alcohol?

16             DEFENDANT F. PERALTA:  No, Your Honor.

17             THE COURT:  Okay.  How about the same question

18   regarding mental illness?

19             DEFENDANT F. PERALTA:  No, Your Honor.

20             THE COURT:  I should have asked your brother this, but

21   let me ask you first:  I know all of you are in custody, but

22   nonetheless, I need to ask Francisco -- and I'm going to use

23   first names, okay, between Oscar and Francisco -- Francisco,

24   have you in the last couple of days taken any drugs, medication,

25   or alcohol?

1          DEFENDANT F. PERALTA:  No, Your Honor.

2          THE COURT:  Okay.  Do you feel well today?

3          DEFENDANT F. PERALTA:  Yes, Your Honor.

4          THE COURT:  Okay.  And Oscar, have you taken any drugs

5  or medication or alcohol in the last few days?

6          DEFENDANT O. PERALTA:  No, Your Honor.

7          THE COURT:  Okay.  Carlos Contreras, how old are you,

8  sir?

9          DEFENDANT CONTRERAS:  I am 49, Your Honor.

10          THE COURT:  Okay.  And how far did you go in school?

11          DEFENDANT CONTRERAS:  High school, Your Honor.

12          THE COURT:  Okay.  Have you suffered from or been

13  treated for any dependency on drugs, medication, or alcohol?

14          DEFENDANT CONTRERAS:  No, Your Honor.

15          THE COURT:  In the last few days, have you taken any of

16  those substances?

17          DEFENDANT CONTRERAS:  No, ma'am.

18          THE COURT:  Okay.  And have you been treated for or

19  suffered from any kind of mental illness?

20          DEFENDANT CONTRERAS:  No, Your Honor.

21          THE COURT:  Do you feel well today?

22          DEFENDANT CONTRERAS:  Yes, ma'am.

23          THE COURT:  Okay.  Very good.

24          I think you all understand that Judge Middlebrooks is

25  the presiding judge in this case, and if each of you do plead

1  guilty today, he will be the judge who sentences you.  You do

2  have the right to request that Judge Middlebrooks hear your

3  guilty pleas, or I can do so, so long as all the parties agree.

4          So Ms. Hernandez, is that acceptable to you?

5          MS. HERNANDEZ:  Yes, Your Honor.

6          THE COURT:  Okay.  Mr. Trese, is that acceptable to you

7  and your client?

8          MR. TRESE:  Trese, Your Honor.  Yes, Judge.

9          THE COURT:  Trese?  Thank you.

10          MR. LURVEY:  Lurvey.

11          THE COURT:  Mr. Lurvey, how about you and your client?

12          MR. LURVEY:  Yes, Your Honor, it is acceptable.

13          THE COURT:  Okay.  And Mr. Gaviria?

14          MR. GAVIRIA:  Yes, Your Honor.

15          THE COURT:  Okay.  All right.  Defendants, each of you

16  certainly have qualified lawyers representing you, but they

17  would not be much help to you if you've not had the time that

18  you need to sit down and talk with them about your case.  You'd

19  certainly want to discuss what the Government has accused you of

20  and what the Government's evidence is to try to prove those

21  crimes.  You'd want to discuss any legal defenses that might be

22  available to you and how you might prove them, and you certainly

23  want to discuss the choice of whether to go to a trial before a

24  jury or enter pleas of guilty.

25          Oscar, have you had the time that you need to meet with

1  your attorney to discuss those matters and any of your questions

2  and concerns?

3          DEFENDANT O. PERALTA:  Yes, Your Honor.

4          THE COURT:  Have you been satisfied with his

5  representation of you?

6          DEFENDANT O. PERALTA:  Yes, Your Honor.

7          THE COURT:  Okay.  Francisco, I'm going to ask you the

8  same question.  Have you had the opportunity you need to sit and

9  work with your lawyer on this case?

10          DEFENDANT F. PERALTA:  Yes, Your Honor.

11          THE COURT:  Have you felt satisfied with his

12  representation of you?

13          DEFENDANT F. PERALTA:  Yes, ma'am.

14          THE COURT:  Okay.  And Carlos Contreras, have you had

15  the time that you need to meet with your attorney?

16          DEFENDANT CONTRERAS:  Yes, Your Honor.

17          THE COURT:  And have you been satisfied with his

18  representation of you?

19          DEFENDANT CONTRERAS:  Yes, Your Honor.

20          THE COURT:  Okay.  Before the Court can accept your

21  guilty pleas, I need to be sure that you understand the legal

22  rights that you give up today by pleading guilty.  So I'm going

23  to review those with you now.

24          First, you have the right to not be here because you do

25  not have to plead guilty.  You can insist that you're not guilty

1    of the charges and have a jury decide your guilt or innocence

2    after a trial.

3            Mr. Contreras, do you understand that you have that

4    right to a trial by jury?

5            DEFENDANT CONTRERAS:  Yes, Your Honor.

6            THE COURT:  How about you, Francisco?

7            DEFENDANT F. PERALTA:  Yes, Your Honor.

8            THE COURT:  And you, Oscar?

9            DEFENDANT O. PERALTA:  Yes, Your Honor.

10           THE COURT:  Okay.  If you did go to trial, you would be

11   guaranteed the assistance of a competent attorney.  If for any

12   reason your current lawyers could not continue and you could not

13   afford to hire a replacement counsel, the Court would appoint an

14   attorney to represent you at no charge.

15           Also, if you did go to trial, you would all have the

16   right to have everyone in that courtroom presume your innocence.

17   That's because at a trial, it would be the job of the Government

18   lawyer to convince a jury beyond a reasonable doubt of your

19   guilt on every charge that, you know, has been filed against

20   you.

21           So I've just mentioned two additional rights.  Oscar,

22   do you feel you understand those?

23           DEFENDANT O. PERALTA:  Yes, Your Honor.

24           THE COURT:  How about you, Francisco?

25           DEFENDANT F. PERALTA:  Yes, Your Honor.

1          THE COURT:  Mr. Contreras, how about you, sir?

2          DEFENDANT CONTRERAS:  Yes, Your Honor.

3          THE COURT:  Okay.  If you did go to trial, you would

4   have the right to hear all the Government's witnesses, your

5   lawyers could question those witnesses to possibly bring out

6   information that could be helpful to you, you could see all the

7   Government's evidence, and if there were witnesses you wanted to

8   come testify in your behalf and they didn't really want to come

9   and do that, the Court could have subpoenas issued to them that

10  would legally compel them to come to the courthouse and be

11  available to you.  Those would all be rights you would have at

12  trial.

13          Also, you would have a choice in how to defend yourself

14  at a trial.  You could get on the witness stand and testify,

15  call other witnesses, as I mentioned, and put other evidence in

16  front of a jury, or you could sit there in the courtroom, say

17  not a word, put on no evidence, and see if the Government could

18  do its job in convincing a jury beyond a reasonable doubt of

19  your guilt.  Both are accepted ways of defending oneself at

20  trial.

21          So let me start with Carlos Contreras.  I just

22  explained a couple of legal rights you'd have at a trial.  Do

23  you feel you understand them?

24          DEFENDANT CONTRERAS:  Yes, Your Honor, I do.

25          THE COURT:  Okay.  And do you understand that by

1  pleading guilty today, you're giving up all the legal rights

2  that I'm reviewing here today?

3          DEFENDANT CONTRERAS:  Yes, Your Honor, I understand.

4          THE COURT:  Okay.  Francisco, do you understand those

5  two additional rights that I mentioned?

6          DEFENDANT F. PERALTA:  Yes, Your Honor.

7          THE COURT:  And do you understand that by pleading

8  guilty today, you give up these legal rights, all of them?

9          DEFENDANT F. PERALTA:  Yes, Your Honor.

10          THE COURT:  Okay.  And Oscar, do you understand the

11  rights that I explained?

12          DEFENDANT O. PERALTA:  Yes, Your Honor.

13          THE COURT:  And that you're giving them all up by

14  pleading guilty?

15          DEFENDANT O. PERALTA:  Yes, Your Honor.

16          THE COURT:  Okay.  The crime you're pleading guilty to

17  is a felony and under our laws when someone is convicted of a

18  felony, typically, it leads the state authorities to revoke

19  certain civil rights you may have such as to vote, to serve on a

20  jury, to run for office or possess a firearm.  Depending on your

21  status in this country, you might have some or all of those

22  rights.  That's not a decision this Court gets to make, but

23  before you plead guilty, I need to be sure you understand that

24  that is a likely consequence of your pleading guilty today.

25          Do you understand that, Oscar?

1          DEFENDANT O. PERALTA:  Yes, Your Honor.

2          THE COURT:  Do you understand that, Francisco?

3          DEFENDANT F. PERALTA:  Yes, Your Honor.

4          THE COURT:  And how about you, Mr. Contreras?

5          DEFENDANT CONTRERAS:  Yes, Your Honor, I do.

6          THE COURT:  Okay.  Also, Oscar, were you born in this

7  country?

8          DEFENDANT O. PERALTA:  No, Your Honor.

9          THE COURT:  Okay.  What is your status here?

10          DEFENDANT O. PERALTA:  Citizen.

11          THE COURT:  You are a citizen?

12          DEFENDANT O. PERALTA:  Yes.

13          THE COURT:  Okay.  Francisco, were you born here, sir?

14          DEFENDANT F. PERALTA:  No, Your Honor.

15          THE COURT:  What is your status?

16          DEFENDANT F. PERALTA:  I am a citizen.

17          THE COURT:  You're a citizen.

18          And how about you, Mr. Contreras?

19          DEFENDANT CONTRERAS:  I'm a citizen, Your Honor.

20          THE COURT:  Are you born here?

21          DEFENDANT CONTRERAS:  No, Your Honor.

22          THE COURT:  Okay.  So you're all naturalized U.S.

23  citizens.  It is possible -- I don't know how likely, but it is

24  possible that your conviction on this charge, which is a felony,

25  could lead the U.S. immigration authorities to change your

1    status in this country and, in particular, to revoke your

2    citizenship.  It's possible that it could lead them to order

3    your removal from this country.  I have no idea if that would

4    happen or not.  That is a matter that U.S. immigration

5    authorities get to decide.

6          What I need to be sure is that this is something you're

7    aware is a possibility and that it's something you've discussed

8    with your attorneys and you understand that it could be a

9    consequence of your guilty plea.

10          Oscar, have you talked about this with your lawyer

11    before today?

12          DEFENDANT O. PERALTA:  Yes, Your Honor.

13          THE COURT:  And you understand it?

14          DEFENDANT O. PERALTA:  Yes, Your Honor.

15          THE COURT:  How about you, Francisco?

16          DEFENDANT F. PERALTA:  Yes, Your Honor.

17          THE COURT:  You've talked about it with your lawyer?

18          DEFENDANT F. PERALTA:  Yes, Your Honor.

19          THE COURT:  Okay.  And Mr. Contreras, have you talked

20    about that with your lawyer?

21          DEFENDANT CONTRERAS:  Yes, Your Honor.

22          THE COURT:  Do you understand?

23          DEFENDANT CONTRERAS:  Yes.

24          THE COURT:  Okay.  Okay.  So do you all have copies of

25    the Plea Agreements and Factual Proffers in front of you?

1          Am I correct that the final signed documents are the

2    same that were sent to me in advance of the hearing?

3          MS. HERNANDEZ:  That's correct, Your Honor.

4          THE COURT:  Okay.  So what I'd like, Oscar, you to do

5    is -- the Plea Agreement that I have, the signed original, is an

6    eight-page document.  You have a copy in front of you.  On the

7    last page of the original I have, I see a signature above your

8    name.  Did you sign the original Plea Agreement, sir?

9          DEFENDANT O. PERALTA:  Yes, Your Honor.

10         THE COURT:  Did you do so after reading every word of

11   it?

12         DEFENDANT O. PERALTA:  Yes, Your Honor.

13         THE COURT:  Do you feel you understand the agreements

14   that are made in that document?

15         DEFENDANT O. PERALTA:  Yes, Your Honor.

16         THE COURT:  And you agree to those terms?

17         DEFENDANT O. PERALTA:  Yes, Your Honor.

18         THE COURT:  Okay.  Why don't we take the Factual

19   Proffer that you have, Mr. Peralta.  The original I have is a

20   four-page document.  Again, I see a signature on the last page

21   above your name with today's date.  Did you sign the original,

22   sir?

23         DEFENDANT O. PERALTA:  Yes, Your Honor.

24         THE COURT:  Did you read every word of it?

25         DEFENDANT O. PERALTA:  Yes, Your Honor.

1          THE COURT:  Do you agree that what's in it is the

2    truth?

3          DEFENDANT O. PERALTA:  Yes, Your Honor.

4          THE COURT:  Okay.  Okay.  Francisco, the Plea

5    Agreement, again, the original that I have is an eight-page

6    document.  I do see a signature on the last page with

7    yesterday's date.  Did you sign that original, sir?

8          DEFENDANT F. PERALTA:  Yes, Your Honor.

9          THE COURT:  Did you do so after reading every word of

10   it?

11         DEFENDANT F. PERALTA:  Yes, Your Honor.

12         THE COURT:  Do you feel you understand what's in that

13   agreement?

14         DEFENDANT F. PERALTA:  Yes, Your Honor.

15         THE COURT:  And you agree to those terms?

16         DEFENDANT F. PERALTA:  Yes, Your Honor.

17         THE COURT:  Okay.  The Factual Proffer for you, sir, is

18   a four-page document.  Again, I see a signature on the last page

19   with today's date.  Did you sign that?

20         DEFENDANT F. PERALTA:  Yes, Your Honor.

21         THE COURT:  Did you read every word of it?

22         DEFENDANT F. PERALTA:  Yes, Your Honor.

23         THE COURT:  Do you agree that what's in that document

24   is the truth?

25         DEFENDANT F. PERALTA:  Yes, Your Honor.

 1          THE COURT:  Okay.  And Carlos Contreras, the Plea

 2 Agreement I have for you, the original, is nine pages long.

 3 There's a signature on the last page.  I don't know what date

 4 you signed that.  It's a little hard to read.  Did you sign it

 5 today, the Plea Agreement, or did you sign it earlier?

 6          DEFENDANT CONTRERAS:  I signed it earlier, Your Honor.

 7          THE COURT:  Not today?

 8          DEFENDANT CONTRERAS:  Oh, today I did, yes.

 9          THE COURT:  You signed it today?

10          DEFENDANT CONTRERAS:  I'm sorry.  Yes, I did.

11          THE COURT:  Okay.  It's just the handwriting.  Okay.

12 So you signed it today.  Did you read every word of it first?

13          DEFENDANT CONTRERAS:  Yes, I did, Your Honor.

14          THE COURT:  Do you feel you understand what the

15 agreement is that you signed?

16          DEFENDANT CONTRERAS:  Yes, Your Honor.

17          THE COURT:  Okay.  The Factual Proffer, okay, is a

18 four-page document.  Again, I see your signature or a signature

19 by your name with today's date.  Did you also sign that?

20          DEFENDANT CONTRERAS:  Yes, I did, Your Honor.

21          THE COURT:  Okay.  And did you read every word of it?

22          DEFENDANT CONTRERAS:  Yes, Your Honor.

23          THE COURT:  Do you agree what's in it is the truth?

24          DEFENDANT CONTRERAS:  Yes, Your Honor.

25          THE COURT:  Okay.  So what I'm going to do now is I'm

1    going to review the terms of the Plea Agreement with you.  I see

2    there are a few differences.

3         I'm going to ask counsel to follow along, and let me

4    know if I've overlooked anything.  What I intend to do is to

5    make sure that we all have the same understanding about the

6    agreements between each of the defendants and the Government.

7    I'm not going to read these Plea Agreements.  You've already

8    done that.  I'm going to summarize terms.

9         Now, it's possible that I could summarize something in

10   a way that's a little different than you've discussed it with

11   your lawyer, and if that happened and I confused you, I'm

12   relying upon you stopping me and letting me know that.

13        I see that you're all pleading guilty to Count 1 which

14   charges you with conspiring together and with others to import

15   into the United States five kilograms or more of cocaine and

16   that in exchange the Government is agreeing to dismiss the

17   remaining charges against all of you.

18        Something that the Plea Agreement does is it tells you

19   the maximum possible penalties that Judge Middlebrooks has

20   available to him when he sentences you, and this is set by

21   Congress.  It's set by law.  So the law says that Judge

22   Middlebrooks must sentence you to a minimum of 10 years of

23   incarceration, but he has the authority to order you to go to

24   prison for as long as your natural lives.

25        After any period of incarceration, he must put you

1    under the supervision of a probation officer for at least five

2    years, but again, he could make that as long as your natural

3    life.

4           He can order you to pay a fine of any amount from zero

5    dollars up to 10 million dollars and he could order you to

6    forfeit to the Government proceeds of your criminal activity and

7    we'll discuss forfeiture a little bit more.

8           Also, on the date of your sentencing, each of you will

9    be expected to pay a $100 special assessment.

10          Oscar, do you feel that you understand what you're

11   pleading guilty to and what those potential kind of worst-case

12   scenario penalties are?

13          DEFENDANT O. PERALTA:  Yes, Your Honor.

14          THE COURT:  Do you, Francisco?

15          DEFENDANT F. PERALTA:  Yes, Your Honor.

16          THE COURT:  And do you, Mr. Contreras?

17          DEFENDANT CONTRERAS:  Yes, Your Honor.

18          THE COURT:  Okay.  Now, the Plea Agreements talk about

19   the Sentencing Guidelines, and I trust you've discussed these

20   with your lawyers.  Let me tell you how I'd summarize them.

21          There are a series of rules that Congress has set that

22   requires this court to follow to do a numerical calculation.

23   This calculation starts with a number we call the offense level

24   that corresponds to the crime you've committed, and then points

25   get added and subtracted depending on the particular

1  circumstances of what you did and how your case is being

2  handled.  It ends up with a number called an adjusted offense

3  level, and that corresponds to ranges of punishment that Judge

4  Middlebrooks is expected to consider following when he sentences

5  you.

6          Now, I want to be sure you know that I don't know what

7  your Sentencing Guidelines are.  I've given it no thought.  I've

8  made no effort to figure it out.  So anything I say today about

9  your Sentencing Guidelines, I'm going to give some examples, but

10 they're just meant to illustrate some ideas that I want to make

11 sure you understand.  Any examples I give aren't really anything

12 that I think would apply to you.  Okay?  Make sense?

13         Okay.  I see you're all nodding.

14         All right.  Have you all looked in the back of that

15 Sentencing Guideline book?  Have your lawyers shown you the

16 chart on the last page that has down the left column numbers,

17 which is the adjusted offense level, and then as you go across

18 on the right, it has criminal history points that get higher.

19 If you have prior convictions, you could have additional points,

20 and then it shows potential ranges of punishment of

21 incarceration in months.

22         Does that sound familiar, Mr. Contreras?

23         DEFENDANT CONTRERAS:  Yes, ma'am.

24         THE COURT:  And Francisco?

25         DEFENDANT F. PERALTA:  Yes, Your Honor.

1          THE COURT:  And Oscar?

2          DEFENDANT O. PERALTA:  Yes, Your Honor.

3          THE COURT:  You've seen that.  Okay.  Good.

4          So I'm going to give a make-believe example.  Let's

5    pretend that the Sentencing Guidelines for each of you -- and I

6    have no reason to think you're all going to be exactly the same,

7    but for my example, the Sentencing Guidelines recommend that

8    Judge Middlebrooks send you to prison between 14 and 16 years

9    and I made up the numbers.  If that was a guideline range for

10   punishment, Judge Middlebrooks would have to give a lot of

11   thought to making sure you go to prison for at least 14 years

12   and not more than 16 years.  And using my make-believe example,

13   if he did that, he would be sentencing you within the proposed

14   guideline range.

15         Does that make sense, everybody?

16         DEFENDANT F. PERALTA:  Yes.

17         THE COURT:  I see all of you nodding yes.  Okay.

18         Now, something I want to make sure you understand is

19   that Judge Middlebrooks does not necessarily have to follow the

20   recommendation of the Sentencing Guidelines.  So again, taking

21   my example, if he were to sentence any one of you to fewer than

22   14 years or more than 16 years, again, my make-believe example,

23   he would be sentencing you outside of the proposed guideline

24   range.  He would be departing or varying from the recommendation

25   of the Sentencing Guidelines in his sentence of incarceration.

1  Does that example make sense to everybody?

2           DEFENDANT F. PERALTA:  Yes.

3           THE COURT:  I see you all nodding yes.  Okay.

4           So what I want to be sure you understand is that what

5  you're doing today is a completely final decision.  This is

6  really important for you to know.

7           This is especially important for you to understand that

8  if you're not happy with how your sentencing turns out, if it

9  ends up being more harsh or worse than what you're hoping, and

10 in particular if Judge Middlebrooks were to sentence you to more

11 than what the guidelines recommend, one thing you couldn't do is

12 take back your guilty plea.  What you're doing today is final,

13 regardless of the outcome of your case.  Do you understand that,

14 Oscar?

15          DEFENDANT O. PERALTA:  Yes, Your Honor.

16          THE COURT:  How about you, Francisco?

17          DEFENDANT F. PERALTA:  Yes, Your Honor.

18          THE COURT:  How about you, Mr. Contreras?

19          DEFENDANT CONTRERAS:  Yes, Your Honor.

20          THE COURT:  Okay.  Now, I see that there are

21 recommendations in your Plea Agreements.  We'll turn to them.

22 That's exactly what it sounds like, a recommendation.  So the

23 Government and you can recommend to Judge Middlebrooks how he

24 calculates the Sentencing Guidelines, how he sentences you, and

25 I can assure you he'll give some real thought to

1   recommendations, certainly those that you all have agreed to

2   here, but he might see it differently.  He might not agree with

3   the recommendations and might not follow them.  And again, if he

4   did that, you would not be able to withdraw your guilty pleas.

5   Do you all understand that?

6           DEFENDANT O. PERALTA:  Yes, ma'am.

7           THE COURT:  I see you all -- Francisco, do you

8   understand?

9           DEFENDANT F. PERALTA:  Yes, ma'am.

10          THE COURT:  Okay.  I'm seeing you all indicate yes.

11          Okay.  So for all of you, I see that the Government is

12  agreeing to make two favorable recommendations to Judge

13  Middlebrooks and, I should mention, to the probation office.

14  Pretty soon you'll meet with a probation officer who will ask

15  you about what you did.  They'll meet with the Government, and

16  that officer will prepare a report for Judge Middlebrooks that

17  you'll get to read before your sentencing.  An important part of

18  that report will be the probation officer's calculation of the

19  Sentencing Guidelines.

20          And so the Government is going to recommend to the

21  probation officer and ultimately to Judge Middlebrooks, because

22  he makes the final decision on the guideline calculation, that

23  whatever your beginning number is, that offense level that

24  starts the calculation, that two points be subtracted for each

25  of you accepting responsibility for your actions.  So that will

1    lower your guideline range and lower the recommended range of

2    punishment.

3            Second, the Government is going to recommend that if

4    your starting number is 16 or greater -- and I don't know if it

5    will be, but if it is, the Government will recommend that one

6    additional point be subtracted essentially for letting us all

7    know in a timely fashion that you've chosen to plead guilty and

8    saving all of us from work that we don't otherwise have to do.

9            The agreement says, however, that the Government does

10   not have to make those favorable recommendations if any of the

11   following things were to happen:  First, if the Government were

12   to learn that when you meet with the probation officer, you're

13   not fully truthful, it would not make those favorable

14   recommendations.

15           Second, if it were to learn that at some point before

16   today that you lied to the Government and they didn't already

17   know about that, again, it would not make the favorable

18   recommendations.

19           Last, if the Government were to learn that after today,

20   but of course before your sentencing, you engaged in some other

21   misconduct, for example, if you committed another crime or if

22   you lied to the Government, again, it wouldn't make those

23   favorable recommendations.

24           I see that both -- that all defendants and the

25   Government are jointly going to recommend that the Court find

1  that the amount of the drugs involved was more than 450

2  kilograms of cocaine.  The Court has to determine the amount of

3  the drugs to calculate the Sentencing Guidelines, and you all

4  are apparently agreeing that it's over that threshold.

5         I see also that for Mr. Francisco Peralta and Carlos

6  Contreras, that the Government's recommending that two

7  additional points be subtracted to reflect what the Government

8  thinks is your minor role in the offense and that each of you

9  defendants, Francisco and Carlos, are saying that you're going

10  to argue for a minimal role, which I think -- is that a

11  three-point reduction?  Right, so it would lower your guideline

12  just a bit more.  Four points?  Four points.  Okay.

13         You're going to argue for a minimal reduction and you

14  can make that argument and it sounds like there will be a

15  dispute as to, do you qualify as minor or minimal within the

16  definition of those terms?  And that's something that you all

17  will present to Judge Middlebrooks and that will get worked out.

18         Also, I see for both Francisco and Carlos that the

19  Government is going to join with you and recommend that Judge

20  Middlebrooks sentence you without regard to that mandatory

21  minimum 10 years in prison.  So this gives the potential that

22  that mandatory minimum sentence would not apply to you, but

23  there's a series of conditions, factual findings that Judge

24  Middlebrooks would have to make for the Government to agree to

25  recommend this and for Judge Middlebrooks to do this.  It's set

1  out in your Plea Agreements and it has to do with your criminal

2  history and making sure that you don't have a certain -- your

3  criminal history stays below a certain level of points and this

4  can only happen if you didn't use violence or threats of

5  violence or hurt somebody or you weren't an organizer or a

6  leader and you truthfully disclose to the Court what you did,

7  things of that nature.  I'm not going to read it all now, but

8  it's a series of facts that the Court would have to find before

9  it could sentence you below 10 years in prison.

10         Mr. Contreras, do you feel you understand that?  It's

11  what's called the safety valve provision.  Have you talked this

12  through with your lawyer?

13         DEFENDANT CONTRERAS:  Yes, Your Honor.

14         THE COURT:  Do you feel you understand how that works?

15         DEFENDANT CONTRERAS:  Yes, I do, Your Honor.

16         THE COURT:  Do you have any questions for me?

17         DEFENDANT CONTRERAS:  No, Your Honor.

18         THE COURT:  How about you, Francisco, is this something

19  you've talked about with your lawyer?

20         DEFENDANT F. PERALTA:  Yes, Your Honor.

21         THE COURT:  Do you feel you understand how the safety

22  valve works?

23         DEFENDANT F. PERALTA:  Yes, Your Honor.

24         THE COURT:  Okay.  No questions for me?

25         DEFENDANT F. PERALTA:  No, Your Honor.

1        THE COURT:  Okay.  Okay.  Then I see that Carlos and

2   Oscar, that you both are agreeing to cooperate with the

3   Government, but this is not true for Francisco, correct?

4        Francisco's lawyer?  Have I got that right, Mr. Lurvey?

5        MR. LURVEY:  Yes, that's correct, Your Honor.

6        THE COURT:  Okay.

7        THE COURT:  So Oscar Peralta and Carlos Contreras,

8   you're agreeing to cooperate with the Government, that is, to

9   provide the Government information about your own criminal

10  conduct and others, and I'm going to assume that you're doing so

11  because you hope that by trying to help the Government, it will

12  cause the Government to conclude that you have provided the

13  Government what we call substantial assistance, and if the

14  Government reaches that conclusion, it will then turn to Judge

15  Middlebrooks at your sentencing and say -- or maybe later, after

16  you've been sentenced, if you're still cooperating, but that it

17  will ultimately lead the Government to tell Judge Middlebrooks

18  that you should get a lower sentence than you otherwise would

19  get because of your cooperation.

20       Let me just -- hold on.  I'm sorry.  I need to keep

21  things straight here.

22       So, Oscar, am I right that that's what you're hoping to

23  accomplish by cooperating?

24       DEFENDANT O. PERALTA:  Yes, Your Honor.

25       THE COURT:  And Carlos, is that right?

1          DEFENDANT CONTRERAS:  Yes, Your Honor.

2          THE COURT:  Okay.  Perfectly legitimate thing to do.

3   Let me tell you the limits of what you control in this

4   arrangement.

5          Both of you, only you will know how truthful you're

6   being and how much effort you're making to assist the Government

7   and you're in charge of that.  What you don't control is how the

8   Government perceives your honesty and your efforts.

9          So I'm going to imagine -- I imagine that this has

10  happened before and could happen again, that someone in your

11  situation, Oscar and Carlos, you could be entirely truthful and

12  make extraordinary efforts to help the Government and you could

13  genuinely believe that what you've done is of great help to the

14  Government, and the Government lawyer and agent could perceive

15  you as dishonest, think that you're making little effort, and

16  genuinely believe that what you've given them just doesn't help

17  them very much.  That could happen.  That's their perception of

18  this.

19         If that were to happen, you would get the assistance of

20  your good lawyers to talk to the Government lawyer and have them

21  try to see it your way.  But beyond that, that's all you could

22  do.

23         The law gives the Government prosecutor the sole

24  discretion to evaluate your cooperation and whether you're

25  providing substantial assistance.  This Court cannot make the

1    Government reach that conclusion, nor can you.

2          So I just need to be sure you understand the limits of

3    what you can control in this cooperation arrangement and that

4    you understand that the Government alone can decide whether to

5    ask Judge Middlebrooks to sentence you to a lower sentencing as

6    basically a reward for your cooperation and that the bottom line

7    will be what the Government says about that.

8          Oscar, do you feel you understand that?

9          DEFENDANT O. PERALTA:  Yes, Your Honor.

10          THE COURT:  Do you, Carlos?

11          DEFENDANT CONTRERAS:  Yes, Your Honor, I understand.

12          THE COURT:  Okay.  I think the rest of these Plea

13    Agreements are the same for everybody.  Right, Counsel, there is

14    no other difference?

15          MR. TRESE:  Yes.

16          THE COURT:  Okay.  So the Government in the Agreement

17    says that it knows it has to keep its promises to you.  Of

18    course it does.  It's entered into a contract with you.  But

19    beyond that, it has the right to offer any opinions or evidence

20    it has about you to the probation officer and the Court.

21          Also, the Plea Agreement points out that as you sit

22    here today, you don't know what your sentence will be.  The only

23    thing you can know is that it can't be more than those maximum

24    penalties that I told you about at the beginning.  That's like a

25    ceiling on what Judge Middlebrooks could do in terms of

1    punishment.  But beyond that, if your lawyers or anyone else has

2    offered you opinions or advice, you need to be clear that that's

3    all it is, are good guesses, and as you sit here today, you

4    don't have a guarantee about what your sentence will end up

5    being.

6          Are you clear about all that, each of you?  I see each

7    of you nodding yes.  Okay.

8          You all are giving up some of your rights to appeal.

9    So normally when somebody is sentenced, if the defendant is

10   unhappy with the way sentence is imposed or the sentence itself,

11   the defendant could complain about that to a higher court, the

12   Court of Appeals.  That's called taking an appeal.  And you

13   could argue at the Court of Appeals that Judge Middlebrooks got

14   it wrong, he made a mistake, and that the Court of Appeals

15   should tell him to resentence you to a lower sentence.  That's

16   kind of a bundle of legal rights that is involved in that, what

17   you can appeal about, and in this Plea Agreement, you're giving

18   up some of the rights in that bundle.

19         So here's what's left for each of you:  If Judge

20   Middlebrooks sentenced you to more than the maximum penalty that

21   I told you about, you could appeal that because that would

22   definitely be illegal.  I'm quite sure it won't happen.

23         Secondly, if he were to sentence you to more than what

24   the guidelines recommend, he may or may not be right about it,

25   but you could complain about it to the Court of Appeals by

1    filing an appeal.

2          And third, if the Government didn't like your sentence

3    and they filed an appeal to complain about it, then you all

4    would be free to make any argument you want about your own

5    opinions about your sentence.

6          Beyond that, you're giving up any rights to appeal your

7    sentence.

8          So Oscar, have you talked about this with your lawyer?

9          DEFENDANT O. PERALTA:  Yes, Your Honor.

10         THE COURT:  Do you feel you understand the appellate

11   rights you're giving up?

12         DEFENDANT O. PERALTA:  Yes, Your Honor.

13         THE COURT:  Francisco, have you talked about this with

14   your lawyer?

15         DEFENDANT F. PERALTA:  Yes, Your Honor.

16         THE COURT:  Do you feel you understand what you're

17   giving up on rights to appeal?

18         DEFENDANT F. PERALTA:  Yes, Your Honor.

19         THE COURT:  And Carlos, have you discussed this with

20   your lawyer?

21         DEFENDANT CONTRERAS:  Yes, Your Honor.

22         THE COURT:  And do you feel you understand this

23   provision?

24         DEFENDANT CONTRERAS:  Yes, I do, Your Honor.

25         THE COURT:  Okay.  Last, forfeiture.  Is there any

1    forfeiture that's actually expected here?

2              MS. HERNANDEZ:  Your Honor, we're still determining,

3    and we're still investigating that part.  As of right now, we

4    haven't identified any specific assets for criminal forfeiture.

5              THE COURT:  Okay.  Nonetheless, there are these

6    provisions in your Plea Agreement that you all are agreeing that

7    if you got any property or proceeds from your criminal conduct

8    or if you used any property to commit the crime, that you would

9    have to forfeit that, that is, give it up and turn it over to

10   the Government.  So, for example, if someone paid you money for

11   this drug offense and then you took that money and you bought a

12   car with it, that would be what we call substitute asset.  You

13   might have to forfeit the car, to give an example.  Money is

14   fungible, right?  We spend it.  But if it could be shown that

15   you got money from this crime, that amount of money could be

16   subject to forfeiture regardless of what you did with it.  If

17   you use something, if you used a computer or a car or a boat or

18   a firearm or something to commit the crime, again, that could be

19   subject to forfeiture.

20             You all are basically in a number of provisions here

21   agreeing to be entirely cooperative about this.  So had you gone

22   to trial and said you were not guilty and had a jury decide if

23   you were guilty or not, you would have had this bundle of rights

24   to try to also fight forfeiture.  And you're essentially giving

25   up those rights.  You're giving up your defenses to forfeiture.

1   You're saying that you will cooperate with the Government, that

2   you'll tell them where your assets are, for example, or give

3   them documents that might help them document what your assets

4   are subject to forfeiture.

5           You understand that forfeiture could be, say, an

6   example -- I'm making this up -- if it were found that you got

7   $10,000 in your pocket for this crime and you had to forfeit

8   that, Judge Middlebrooks could still order you to pay a fine.

9   The fact that you give some money over in forfeiture doesn't

10  extinguish any right he would have to fine you of some amount.

11          So I've just kind of summarized a number of the

12  provisions about forfeiture.  The concept is a little

13  complicated, but tell me, Oscar, do you feel that you understand

14  the subject from what I've said and what you've talked about

15  with your lawyer?

16          DEFENDANT O. PERALTA:  Yes, Your Honor.

17          THE COURT:  Do you feel you understand it, Francisco?

18          DEFENDANT F. PERALTA:  Yes, Your Honor.

19          THE COURT:  Carlos?

20          DEFENDANT CONTRERAS:  Yes, Your Honor.

21          THE COURT:  Okay.  Last provision I see is that what

22  we've now reviewed is the entire agreement you have with the

23  Government.  In other words, every agreement is in writing in

24  this Plea Agreement, and there's no verbal discussion that

25  you've had that didn't make its way into this document that you

1  all know about as a promise or expectation as part of your

2  guilty plea that I don't know about.

3           So, Oscar, are all the agreements you have with the

4  Government in writing in this document?  Do you understand my

5  question?

6           DEFENDANT O. PERALTA:  No.

7           THE COURT:  I'm asking -- the Plea Agreement says that

8  all the understandings that you have with the Government about

9  your guilty plea are in writing in the Plea Agreement.  Is that

10  true?

11          DEFENDANT O. PERALTA:  Yes, Your Honor.

12          THE COURT:  Is there some verbal -- is there something

13  else that's not in writing that you're still counting on --

14          DEFENDANT O. PERALTA:  No, Your Honor.

15          THE COURT:  -- to get you to plead guilty?

16          DEFENDANT O. PERALTA:  No, Your Honor.

17          THE COURT:  Okay.  So I know everything.

18          DEFENDANT O. PERALTA:  Yes, Your Honor.

19          THE COURT:  Francisco, do you understand the question?

20          DEFENDANT F. PERALTA:  Yes, Your Honor.

21          THE COURT:  Okay.  And is that true, this last

22  provision that says everything is in writing?

23          DEFENDANT F. PERALTA:  Yes, Your Honor.

24          THE COURT:  Okay.  And Carlos, do you understand my

25  question?

1          DEFENDANT CONTRERAS:  Yes, Your Honor.

2          THE COURT:  And would you agree that everything, all

3   the agreements are in writing?

4          DEFENDANT CONTRERAS:  Yes, Your Honor.

5          THE COURT:  Okay.  Putting aside the Government, let me

6   ask you, has anyone else aside from the Government said anything

7   to you, offered you anything, maybe even pressured you or

8   threatened you, done something to talk you into pleading guilty?

9   Oscar, has that happened?

10          DEFENDANT O. PERALTA:  No, Your Honor.

11          THE COURT:  Is it fair to say, sir, that after meeting

12   with your lawyer and understanding your options here, that your

13   being here today to plead guilty is a voluntary choice?

14          DEFENDANT O. PERALTA:  Yes, Your Honor.

15          THE COURT:  Okay.  Francisco, has anyone else said

16   anything to talk you into pleading guilty?

17          DEFENDANT F. PERALTA:  No, Your Honor.

18          THE COURT:  Is your decision to plead guilty voluntary?

19          DEFENDANT F. PERALTA:  Yes, Your Honor.

20          THE COURT:  Carlos, same questions for you.  Has anyone

21   else said something to get you to plead guilty?

22          DEFENDANT CONTRERAS:  No, Your Honor.

23          THE COURT:  Are you pleading guilty voluntarily?

24          DEFENDANT CONTRERAS:  Yes, Your Honor.

25          THE COURT:  Okay.  So now what I'm going to do is ask

1  the Government to tell me the elements of the crime that you're

2  pleading guilty to.  When the law says that something is

3  illegal, what we lawyers do is break down that crime into its

4  parts and we call it the elements of the offense, and the

5  Government would have to convince a jury for each element beyond

6  a reasonable doubt that it's true that you did the things you're

7  accused of.

8          So we need to be clear on what the Government would

9  have to prove at a trial before you could be found guilty and

10  then I'm going to ask you some about what you did to commit this

11  crime and the reason we're doing this is I need to be assured

12  that there's evidence that you, in fact, committed the crime

13  charged in Count 1.  If there was not, we would not want your

14  guilty plea.  Okay?

15          Go ahead, Ms. Hernandez.

16          MS. HERNANDEZ:  Yes, Your Honor.

17          In order to prove Count 1 of the Indictment, the United

18  States would have to prove first that two or more persons in

19  some way or manner agreed to accomplish a shared and unlawful

20  plan to import cocaine; second, that the defendant knew the

21  unlawful purpose of the plan and willfully joined in it; and

22  third, that the object of the unlawful plan was to import five

23  kilograms or more of cocaine.

24          THE COURT:  Okay.  So having looked at the Indictment,

25  it charges that this conspiracy, which is this unlawful

```
 1    agreement that you're here to acknowledge, if you assure me of
 2    that, took place between at least December of 2018 -- some time
 3    between December of 2018 and November 22nd of 2019.  That's the
 4    time frame of this alleged conspiracy, and I see that really
 5    what's key here was a trip that, Oscar, you made on this vessel,
 6    motor vessel the NIVIA with Mr. Ellington.  I gather this boat
 7    left Miami on November 15th of last year, got to the Turks and
 8    Caicos on November 16th of last year, somewhere along the way
 9    was loaded with 456 kilograms of cocaine, and returned -- I
10    gather it was you, Oscar, and Mr. Ellington returned on November
11    22nd of last year and docked at a private dock behind a
12    residence in Fort Lauderdale and it was loaded with that
13    cocaine.  Is that right, Oscar?
14              DEFENDANT O. PERALTA:  Yes, Your Honor.
15              THE COURT:  Okay.  Oscar, you knew that you had the
16    drugs on the boat, right?
17              DEFENDANT O. PERALTA:  Yes, Your Honor.
18              THE COURT:  Did you know what you were doing was
19    unlawful?
20              DEFENDANT O. PERALTA:  Yes, Your Honor.
21              THE COURT:  Were you working with others to make this
22    happen?
23              DEFENDANT O. PERALTA:  Yes, Your Honor.
24              THE COURT:  Okay.  Francisco, tell me what you did,
25    what your role was here.  Am I right, you showed up at the
```

1    residence on November 22nd when the boat arrived loaded with

2    drugs?

3              DEFENDANT F. PERALTA:  I rent the house where the boat

4    is supposed to dock --

5              THE COURT:  Right.

6              DEFENDANT F. PERALTA:  -- and I rent three cars also.

7              THE COURT:  Okay.  And I think you also bought some

8    duffel bags --

9              DEFENDANT F. PERALTA:  Yes, ma'am.

10             THE COURT:  -- maybe on that date, November 22nd?

11             DEFENDANT F. PERALTA:  Yes, ma'am.

12             THE COURT:  And the purpose of the bags was so that the

13   drugs could be loaded in them, put in them, and then facilitate

14   getting them off the boat?  Am I right, is that what the duffel

15   bags were for?

16             DEFENDANT F. PERALTA:  Yes.  Yes, ma'am.

17             THE COURT:  Okay.  And Francisco, did you understand

18   there were drugs on that boat?

19             MS. HERNANDEZ:  Your Honor, if I may.

20             THE COURT:  Yes.

21             DEFENDANT F. PERALTA:  No.

22             MS. HERNANDEZ:  I think what we wanted to set out and

23   what we wanted to explain in the Factual Proffer was that we

24   would be proceeding and what the Government would be prepared to

25   show at trial is that based on the circumstances and based on

1    the actions undertaken by Mr. Francisco Peralta, he either

2    actually knew or he was deliberately ignorant to the fact.

3         THE COURT:  Okay.  So let's understand what that means.

4    If you're deliberately ignorant, what did you think?  What did

5    you think was going on?

6         DEFENDANT F. PERALTA:  I didn't know about the drugs.

7         THE COURT:  Did you think that something illegal may be

8    happening?

9         DEFENDANT F. PERALTA:  Yes, Your Honor.

10        THE COURT:  Okay.

11        MS. HERNANDEZ:  And based on the circumstances, based

12   on specifically trying to avoid gaining additional knowledge

13   that would confirm the fact that it was, in fact, drugs, we

14   believe that that would support the deliberate ignorance; that

15   is, Mr. Francisco, he specifically avoided having conversations,

16   specifically avoided asking questions that would then lead him

17   to have actual knowledge.

18        THE COURT:  Okay.  Francisco, this is your brother

19   Oscar who you understood was kind of in charge of whatever was

20   happening with the boat; is that right?

21        DEFENDANT F. PERALTA:  No, he wasn't in charge.

22        THE COURT:  He wasn't?  Okay.  Did you deliberately not

23   want to know too much about what was on the boat?

24        DEFENDANT F. PERALTA:  I didn't ask questions.

25        THE COURT:  Why didn't you ask questions?

1           DEFENDANT F. PERALTA:  Because I didn't want to be

2    involved on whatever they were doing.

3           THE COURT:  Okay.  Okay.  I understand that you texted

4    Oscar the day of the arrival of the boat, I guess, November

5    22nd -- I'm reading this in the proffer -- with a message

6    warning that Mala might be being followed and to be careful.  So

7    it was some kind of warning to Oscar.

8           DEFENDANT F. PERALTA:  That was something that I heard

9    the same day I pick up the other person to go to the house.  I

10   heard that comment, so that is why I sent the text message.

11          THE COURT:  Who's the other person that you picked up?

12          DEFENDANT F. PERALTA:  The leader is Juan, his boss.

13          THE COURT:  Juan?

14          DEFENDANT F. PERALTA:  Juan Duarte.

15          THE COURT:  Okay.  Juan Duarte is another defendant in

16   this case?

17          DEFENDANT F. PERALTA:  Yes.

18          THE COURT:  Okay.  So you were concerned that that

19   might suggest that there was going to be some trouble for Oscar

20   and you wanted to warn him about that?

21          DEFENDANT F. PERALTA:  Yes, Your Honor.

22          THE COURT:  Okay.  And being followed like by whom?

23          DEFENDANT F. PERALTA:  I just heard that he -- maybe he

24   have a tail, maybe by cops.  I don't know.

25          THE COURT:  Maybe by cops, is what your guess might be?

1           DEFENDANT F. PERALTA:  No, I just heard the word

2    "tail."

3           THE COURT:  Tail?

4           DEFENDANT F. PERALTA:  Yes.  "Cola" in Spanish.  Tail,

5    like someone was follow him.

6           THE COURT:  Okay.  But am I right that --

7           DEFENDANT F. PERALTA:  They didn't say it was a police

8    officer or somebody else.  I only heard that.

9           THE COURT:  But am I right that being tailed, the

10   suggestion was -- I mean, that doesn't -- people who are doing

11   legal things normally don't get followed, right?  Being followed

12   would suggest that somebody was involved in something illegal.

13   Was that your concern?

14          DEFENDANT F. PERALTA:  Yes, Your Honor.

15          THE COURT:  Okay.  And so in this proffer it says that

16   you knew or had every reason to know that the motor vessel NIVIA

17   had drugs, but you deliberately closed your eyes to it.  That's

18   what it says here that you're admitting.  Is that true?

19          DEFENDANT F. PERALTA:  I didn't know about the drugs,

20   so I know that something illegal was happening.

21          THE COURT:  Okay.  Everybody clear that that's --

22          MS. HERNANDEZ:  That's correct, Your Honor.  That's

23   fine.

24          THE COURT:  -- adequate?

25          And Mr. Lurvey, is that your understanding of what the

 1   acknowledgment is?

 2            MR. LURVEY:  What my client just said, yes, Your Honor.

 3            THE COURT:  Yes.  Okay.  All right.

 4            And then Mr. Contreras, I understand that on November

 5   22nd of last year, which is the date that the boat came back to

 6   this dock, you and Oscar were seen walking out of the residence

 7   where this boat had docked, right?

 8            DEFENDANT CONTRERAS:  That's correct, yes.

 9            THE COURT:  You were there?

10            DEFENDANT CONTRERAS:  Yes.

11            THE COURT:  And that you acknowledged to law

12   enforcement that Mr. Duarte had asked you to drive a car from

13   Brickell up to Fort Lauderdale that day, and you, I gather, had

14   dealt with Mr. Duarte before, had some dealings with him, and

15   based on that, that you knew that you were probably driving a

16   car up there to facilitate some sort of drug trafficking

17   venture; is that fair to say?

18            DEFENDANT CONTRERAS:  Yes, Your Honor.

19            THE COURT:  Okay.  I think I've covered the key points

20   here.  Any disagreement about that?

21            MS. HERNANDEZ:  No, Your Honor.

22            THE COURT:  Okay.  Okay.  So any of the defendants, do

23   you have any questions for me or your lawyers about anything

24   that has been said here?

25            DEFENDANT CONTRERAS:  No.

1      THE COURT:  No?  I see everybody shaking their heads

2  no.  Okay.

3      So then let me ask Oscar, how do you plead to Count 1,

4  guilty or not?

5      DEFENDANT O. PERALTA:  Guilty.

6      THE COURT:  Okay.  Francisco, how do you plead to Count

7  1?

8      DEFENDANT F. PERALTA:  Guilty.

9      THE COURT:  And Carlos, how do you plead to Count 1?

10      DEFENDANT CONTRERAS:  Guilty.

11      THE COURT:  Okay.  So what I'll do is prepare a report

12  for Judge Middlebrooks.  I will tell him that I certainly think

13  you all are intelligent, mentally competent, and capable of

14  understanding what you're doing in making the choice that you've

15  made to plead guilty.  I'll tell him that I think you're acting

16  voluntarily in pleading guilty.  I'll tell him that I think

17  there is evidence that would support a jury finding you guilty

18  of these charges if you had gone to trial, and I will recommend

19  that he accept your guilty pleas.

20      Your sentencing will be on May 12th at 10:30 a.m. in

21  the King courthouse.  You'll get formal notice of that.

22      Am I right that the parties agree that these three

23  defendants will remain in custody until that time?

24      MS. HERNANDEZ:  That would be the United States'

25  recommendation, Your Honor, yes.

1        THE COURT:  All right.  Nobody is arguing otherwise?

2   No, I didn't think so.

3        Okay.  Very good.  Thank you.

4        MR. TRESE:  Thank you.

5        MR. LURVEY:  Thank you, Your Honor.

6        MS. HERNANDEZ:  Thank you, Your Honor.

7        THE COURTROOM DEPUTY:  All rise.

8     (The hearing concluded at 4:15 p.m.:)

9

10            C E R T I F I C A T E

11        I hereby certify that the foregoing is an accurate

12   transcription of proceedings in the above-entitled matter.

13

14   ___05-28-21_____     _____
          DATE                GILDA PASTOR-HERNANDEZ, RPR, FPR
15                            Official United States Court Reporter
                              Wilkie D. Ferguson Jr. U.S. Courthouse
16                            400 North Miami Avenue, Suite 13-3
                              Miami, Florida  33128     305.523.5118
17                            gphofficialreporter@gmail.com

18

19

20

21

22

23

24

25